Good morning, Your Honors, and may it please the Court, my name is Brian Ferrantino of Morgan, Lewis & Bacchius, LLP, representing Appellant American Express National Bank. We are here to address the District Court's second denial of American Express' motion to compel arbitration of Barnett's Fair Credit Reporting Act claim, pleaded for the first time in this independent lawsuit Barnett filed against American Express. A decision that we contend was again an error and should be reversed based on this Court's controlling precedent in 4B2. Applying the claim-by-claim waiver analysis, not the common nucleus of operative facts waiver analysis that this Court rejected in 4B2. Counsel, it seems to me the premise for your argument, well put in your brief, is that the only way to show a waiver of an arbitration clause is in the manner that you're addressing, uh, which is, uh, allowing litigation to go on too long, bringing your own lawsuit, something else. Why is that the only way? It does seem to me that Judge Wingate in, in the motion imposing, in the opposition to the motion to compel, they also argued these three letters ignored by American Express allegedly, was another way to show waiver. Uh, what do we know, what is in the Fifth Circuit that says the only way to show a waiver of an arbitration clause is the, is the point you're trying to make? I wouldn't say it was the only way, but it, it requires some, some indication or, or affirmative act or affirmative inaction, I guess, that you are choosing to litigate instead of arbitrate. Okay. Well, in the response to the, to the motion to compel, uh, Barnett says there were four attachments, three letters in the complaint that American Express filed in Madison County, I guess it was. And so we're just setting out here that American Express ignored Plano's attempts to arbitrate the central claim, uh, and she cites, uh, Brian Jackson's Middle District of Louisiana opinion that is somewhat, uh, cited back then in the district court, somewhat support for that. It doesn't seem to me it's on the table, that there's something else that we need to look at. Well, I would have to disagree, Your Honor. I don't, I disagree that her letters sent almost seven months before the collection lawsuit was filed by American Express is a request for American Express to initiate an arbitration of Ms. Barnett's separate fair credit reporting act claim against itself. Yeah. Well, I want you to return to the argument you were trying to make, but I do think we will have to deal with both of these issues. I want you to return to your argument about, uh, claim by claim, uh . . . About what? I'm sorry? Well, the one I cut you off from, that is a claim by claim determination . . . Correct. . . . whether it's a waiver or not. Correct. So it's not, it is not an issue specific or material fact specific or element specific test. This court has articulated that it is a claim by claim analysis. And here we have two separate claims. And it is, it is not uncommon for a bank to initiate, you know, banks get communications from their borrowers all the time, threatening things, saying, I don't owe this money, saying that you messed up my credit report, saying a whole host of, a variety of things. And that doesn't mean that seven months later, when there's, you know, it's not in the record, but most likely there's continual statements being sent, and the person is not paying, and not, not hearing from the person, that they would just file an ordinary debt collection lawsuit. And at that time, Ms. Barnett could have shown up in that collection lawsuit and said, I want to arbitrate this claim, and elected arbitration. That's what we did here when she asserted her FCRA claim. She didn't do that. She didn't show up at all. And she's claiming that for some reason, that means we've waived our right to arbitrate her new claim. Counsel, what is the definition of a claim? The definition of a claim, at least as far as 4B2 goes, and relying also on the Eleventh Brief, pled in a pleading. That is our view of what a claim is. We believe that is what 4B2 says. So how do you know where one claim ends and the next one begins? Well, it's easy here, because we're talking about a breach of contract claim, asserted by, filed by American Express, where American Express was the plaintiff, against Ms. Barnett, versus a new lawsuit asserting a Fair Credit Reporting Act federal claim in court against American Express, where American Express is the defendant. Those are two distinct claims. And is it because those are different sources of law? One state, one's federal? I don't think it's because one state and one's federal. I just think that further separates them. Well, you know from 4B2 footnote 12 that it's not just the common nucleus of operative fact. We know that doesn't distinguish one claim from another. So it has to be something related to the law. I mean, it's interesting to me, 4B2 uses the word claim, I don't know, two dozen, three dozen times, but doesn't define it. It's a perilous question that cuts across all areas of federal law. And I'm curious, if we're supposed to do claim by claim, if you can offer me a definition of claim that would help me know when one claim ends and the next one begins. Yes, I would refer to this court's reliance on collado again. And I actually have a quote prepared, which is, quote, knowing that a potential claim may lurk in the shadows of a case is not the same as litigating against a claim that has been brought out into the open in a pleading. A defendant is not required to litigate against potential but unasserted claims. So that is how I would. Yeah, but she's going to, of course, say this was not latent at all. It was quite patent, in fact. This entire dispute revolves around an unpaid debt. And so that's in a pleading. It was in all kinds of pleadings. It was in your original state court breach of contract pleading. It was in the motion to compel arbitration. It was in the letters that Judge Southwick referenced. It's not latent at all. Everybody knows what y'all are fighting about, which is whether she owes the money. Well, that is what my opponent would like you to believe. And I don't agree with that. And I totally understand. I'm just curious how you know that that's not a patent as opposed to latent claim.  So again, consumers will threaten claims all the time. And we don't know what a Fair Credit Reporting Act claim or a Fair Debt Collection Practices Act claim or a Fair Credit Billing Act claim or a Truth in Lending Act claim or any claim is going to look like until it is in the pleading. That's how we know how to defend it is because we need to see what the actual claim is. In the Fair Credit Reporting Act context, you can have a whole host of things that you say are inaccurate. Your payment history, your credit limit, when the account was open, when it was closed, whether you were delinquent, whether it was charged off, et cetera. So while Ms. Barnett said in her letter, I don't owe this balance, we don't know until she pleads the claim, excuse me, what the Fair Credit Reporting Act claim actually is. And there are more elements to a Fair Credit Reporting Act claim than just whether the debt is valid. Entertain a hypothetical for me. I'm going to try to make this simple and strip out some of the complexities. Case number one involves two claims of common law fraud between plaintiff and  Case number two, same parties, same common law fraud, but now they're predicates for RICO, civil RICO. Are those different claims or the same claim? The facts are identical. The fraud alleged is the same method and, you know, the same injuries, et cetera. The sources of law are different. Obviously, the relief is different because RICO is going to be different than common law fraud. Are those the same or different under your theory of the definition of a claim? I believe under 4B2, they're different because we had an unjust enrichment claim. We had an Illinois Consumer Fraud Act claim in the first lawsuit that the defendant moved to dismiss. Plaintiff was here. I remember 4B2. I'm trying to strip out a bunch of the complexity to make it very simple. Two elements of two claims of common law fraud. First, it's just common law fraud. Second, it's the same theories of common law fraud, but now those are predicate acts for civil RICO. Different claims. Different claims. And it's because... They're different causes of action. Got it. That's what I was looking for. So it really is what arises under a different source of law. Yes. As we all, as lawyers, know, in order to file a lawsuit, you have to have some cognizable legal theory, a cause of action, a claim for relief, however you want to define it or call it, label it. But it has elements. It has facts that you have to show. That is the difference here. Whether it's, even though there's always, or not always, but usually there's alternative theories of relief, the same facts may prove similar elements, the same elements, but it's still a different claim for relief. Your remedies might be different. There's a whole host of things that can be different. But I believe that under 4B2, if it's a different cause of action, to your Honor's point, then it's a different claim. Great. Thank you. Well, let me ask you about the relevance of the Supreme Court's decision in Morgan v. Sundance. That case made clear that it's, even though there's favoritism, perhaps, or willingness in federal courts to allow arbitration more broadly than perhaps in the past, it is subject to the same rules as any other procedure. And so, waiver works the same way. And so, it does seem to me that waiver can arise potentially as was said in Judge Wingate's opinion, I'm trying to think of this as a 2021 or 2024, U.S. District Court applied the Eighth Circuit, maybe this is a brief, applied the Eighth Circuit's test for waiver, where a party waives its contractual right to arbitration if he knew of the right, acted inconsistently with that right, and prejudiced the other party by that inconsistency. Getting back to the letters, again, Judge Wingate relied on the letters as well as what you have been talking about, the Madison County lawsuit. Why isn't that a form of, of, of waiver, I don't know if it fits the facts of this case insofar as what the prejudice to Ms. Barnett was or anything else, but waive your contractual right to arbitration if you knew of the right, we'll assume American Express did, acted inconsistently, did not respond to three requests to invoke arbitration, and then may or may not have prejudiced Ms. Barnett. Isn't that a form of waiver that we have to consider? I do not believe so, because I think that what . . . Is it because it wasn't presented? Isn't it in the case at least, whether, all I said is consider, I'm not saying rule in favor of it, but isn't that in this case, because it was presented in the District Court in the motion, in opposition, not in the motion, in the opposition to the motion to compel, it was in Judge Wingate's decision, you can see it in 21 and 22 and 24, and it's in the police brief here. Now, you say it's really about breach. I say it's about, it looks to me like it's more accurately described as about waiver. So, first question is, is that issue in this case that these three letters matter? And if it is in this case, what's your response to my description of how waiver might operate by your client having acted inconsistently with the right to arbitration? I do not think the letters matter, because . . . What do you think the issue is in the case, my first question? Are they in the case? Is the issue of whether that is a form of waiver shown by these letters, is that issue in this case properly for us to consider? Are the basis of waiver based on the letters, is that a proper issue in the case? Is that your question? I just want to make sure. I'm asking you if it is, because your brief never recognizes it as an issue and pushes back on it, saying that it's really an issue of breach and that was never properly pled. I'm saying, it looks to me, at least Judge Wingate, in the motion in opposition to the motion to compel, is raising it as an issue of waiver, not as a breach. So, I'm just wondering if you still would push back that the issue of those three letters is not before us as a component of waiver. Okay. So, I think I understand your question. We do not think that plaintiff adequately raised the breach of contract issue. Whether the letters constitute a waiver, they put those letters in evidence and they said that our ignoring them is our act inconsistent with waiver. But my point is, if she's using those letters, she's saying in those letters, you botched the investigation of my credit reporting dispute. And she is trying to say that, based on that, we're supposed to assume that she's going to assert a Fair Credit Reporting Act claim, we're supposed to initiate an arbitration asserting a Fair Credit Reporting Act violation against ourselves. That's not how this works. She has to assert the claim. She has to bring the claim. She could have filed this lawsuit originally in arbitration, and we would have responded in arbitration. But instead, she brought it in court, so we moved to compel arbitration. But it hadn't been asserted yet, so those letters can't be a waiver. Alright, counsel. I got your answer. I'll leave the rest of my time for rebuttal. Alright. Thank you. May I please the court? I'm Chris Cattell and I represent the plaintiff in this matter. I see that there's two, in my opinion, there's two key issues in this case. And you, Judge Southwick and Judge Oldham, you both hit on those with your questions. First is whether the plaintiff's FCRA claims were brought up or raised prior to the acts that constituted the waiver of arbitration, or whether they're brought up after. And as Judge Southwick, you've hit the nail on the head. Those letters are where they were brought up. My client wrote these letters, or my client wrote these three letters in September and October of 2018, after her FCRA claims were right, but before the lawsuit that was filed by American Express in state court. She wrote, and she'd already, like I said, these claims were already  She'd already disputed to the credit bureaus. The credit bureaus had relayed her disputes to American Express. American Express, in our opinion, has botched their investigation of her disputes, which gives rise to her S2B claims under the Fair Credit Reporting Act. So those are already right. And she writes in her letter that, quote, despite my attempts to dispute these charges, you have continued to attempt to collect these disputed fraudulent charges, and to report them to the credit reporting agencies. And then she asked for information about their investigation, because she was trying to find out what they did to investigate, because obviously, in her opinion, they got the wrong answer, because they keep verifying this fraudulent debt to the credit bureaus, so it will stay on her credit report. And then, she specifically says in each of the three letters, I elect private contractual arbitration via jams to resolve any disputes between us, any disputes. But she just specifically gave the elements of her FCRA claim, even though she didn't say, I want to arbitrate my FCRA claim, she said, her issue is that she's disputed these inaccuracies, and they keep verifying the information and keeping it on her credit report. So that's, as Judge Oldham said, is that latent or patent? It's definitely patent. It's right there out in the open, and the American Express's failure to participate in the arbitration after she elected arbitration, because the arbitration agreement, she followed it, as far as how you initiate an arbitration. It says you're supposed to put the opposing party on written notice and pick an arbiter. That's what she did. She put them on written notice. She picked the arbiter, which is jams of the two different arbiters she could pick from. And the only other element, or the only other thing that the notice should include, potentially include, would be a demand, a monetary demand. Well, at this point, she's not after a monetary demand. She's just trying to get her credit report corrected. So there's really, you know, she's done what she's supposed to do to initiate this arbitration, and what she got in response was zilch. She got no response from American Express. They just ignored her requests, and as Judge Southwick said, you know, the district court judge, that's what he viewed as waiver, because they ignored her requests, but they also went one step farther than just ignoring her requests to arbitrate. They then, a few months later, filed a collection action against her regarding this debt that she's disputing. And that goes to the issue, I believe, Judge Oldham was questioning the opposing counsel about, about whether there's two different claims or if it's the same claim. And that's kind of the issue that Forbee starts to resolve, but in Forbee, the issue was, or the claims were different. The claims that were brought up before the motion to dismiss in Forbee, which was the waiving action, were basically an Illinois UDAP claim and a common law unjust enrichment claim. The elements of those two claims are completely different than the claims that were brought, the claim that was brought up later, that Forbee too found was not waived, because it's an entirely new claim. It was a credit reporting organization act claim, which has a lot of technical things like certain notices that have to be sent out and things like that, that while the facts between the two, the claims pre-waiver and post-waiver may overlap, the elements of those two claims do not. And as opposing counsel said, you have to have a cause of action. Well, causes of action are made up of elements, as this Court is well aware. The causes of action in this case, the element does overlap, because when you have an FCRA claim under 1681I, which applies to the credit bureaus, or 1681S-2B, which applies here to American Express, whether the debt that's being, or whatever is being disputed is inaccurate, is a threshold issue. As Judge Ramirez wrote recently in the Reyes case that came out last month, that's a threshold issue. So when American Express files this collection lawsuit, seeking a judgment that my client owes this fraudulent debt, they're attacking the threshold issue and litigating the threshold issue. So at that point, not only have they waived arbitration by ignoring her attempts to arbitrate, they are now litigating one of the, or the threshold issue of her FCRA claim, a claim that they know is not just lurking, it's, like you said, it's patent. It's right there out in the open, because she put it out in the open when she wrote those three letters, that they don't deny receiving. If we assume what you just argued, what about the requirement that American Express substantially invoke the judicial process? It filed suit, but the suit was dismissed for warrant of prosecution. How does, how is that substantially invoking the judicial process? Well, I mean, the filing of a lawsuit, I think, is substantially invokes it. Any case law that says just filing the lawsuit is substantially invoking? Well, there is case law that says, the case is cited by opposing counsel where he says that filing a lawsuit is not normally just enough to waive arbitration. The cases he cited, though, have arbitration agreements that carve that out and say filing an arbitration, filing a collection action does not waive arbitration. So it's kind of the reverse, but I don't know of a case exactly on point for that issue, but it's certainly, when you're trying to litigate the core issue in her case, the threshold issue, like you said in Reyes, I don't see how it couldn't be because if they . . . because that was at the point where they hired me. I wasn't involved in the case at all. They didn't have any lawyer on this case until they were sued by American Express, and at that point, they're like, well, we've asked for arbitration, they've ignored us, now they're suing us. So they had to hire me and pay me money to defend them. So I filed an answer, and then they . . . admittedly, they didn't do anything else at that point, but at that point, I believe the arbitration had been waived twofold by ignoring her request to arbitrate and proceeding or filing this collection lawsuit. Because they were trying to, in my opinion, kind of do an end run around her FCRA claim because they knew about the FCRA claim because she brought it up in her three letters that have been mentioned before. I didn't see the docket, nor should it have been, otherwise, on this Madison County case. Are you saying if you were the lawyer on the case that Ms. Barnett was served, you responded to the answer and the case just died at that point? That's right, Your Honor. Okay. Was it formally dismissed or is it just formally dismissed either by motion or by the court itself or inaction? I believe it was a clerk's motion to dismiss because it sat there for a year because once I filed the answer, I wasn't going to push it. In the meantime, she's lodging her FCRA disputes. She made some disputes before her three letters that we've talked about. She kept on making them after the fact because she really had no other option other than to file a lawsuit. I know opposing counsel said that she could have brought it up in arbitration in the state court action, but by that point, it had already been waived. When I got involved, I don't like arbitration. I don't think it's as fair to my clients as the court system, which I believe, like a lot of people say, may not be perfect, but it's the best one anywhere in the world. I advised them at that point. In my opinion, it had been waived twofold and we need to proceed with   Do you have anything else for us? Not unless you have questions for me, Your Honor. All right, counsel. Judge Ramirez, you just asked about the substantially invoking the judicial process and I wanted to address that quickly. American Express filing a collection action is not substantially invoking the judicial process on the FCRA claim. Again, as we know from 4B2, this is not an element or a fact or an issue-specific test. This is a claim-specific test and while Barnett argues strenuously that the breach of contract action would have established a threshold element to the breach of contract claim through to completion and prevailed, the FCRA claim would still have to be litigated because first we would need to see what the claim was. Perhaps it would be based on something other than the amount of the debt or that she owed the money. Maybe it was she admits that the account was hers and that the payment history and everything else belonged to her. Maybe she would have had some other type of complaint about how the account was reported. But not only that, but in order to, we of course, if we had won the breach of contract claim, we would have argued that the inaccuracy element is not met, but that question would have to be arbitrated. It does not mean that we've waived arbitration as to the FCRA claim. What Barnett is trying to do is trying to align her circumstances with the cases where a party did something that caused them to forfeit their right to arbitrate, like refusing to participate in arbitration after it was filed or refusing to pay their portion of the arbitration fees. None of that happened here. None of that happened here. And she could have elected arbitration. Even the Ninth Circuit . . . Let me just say, are the letters themselves not the way that your agreement with your cardholders say is the proper way to invoke arbitration? Is sending a letter responding to the demand to American Express under the agreement with the cardholder insufficient to invoke arbitration? It was insufficient. You can certainly send a letter, a pre-dispute letter, and see if that resolves the issue, and if it doesn't, then you can initiate your arbitration. But she didn't do that. She filed a lawsuit, and so we moved to compel. I mean . . . So she was basically looking to you, it seems to me, your client, to start the arbitration process . . . Correct. . . . as opposed to starting it herself. Correct. You don't think that's the problem with the letters? There is a problem with that, yes. We are not in the business of initiating lawsuits against ourselves in arbitration. So if she has a claim, and she doesn't get it resolved pre-dispute, she can initiate it in arbitration. She keeps arguing that she had no choice but to file this lawsuit. That's just not true. She could have filed it in arbitration, and we would have responded. She can't argue otherwise. There is no evidence in the record that we refused to do that like in these other cases. Even the Ninth Circuit would not extend the Brown v. Dillard's case to a situation like that in Cox v. Oceanview Hotel Corporation that it decided three years after Brown to say that, like here, where the party resisting arbitration had never initiated arbitration in the first place, it's not a waiver to not arbitrate. You have to initiate the arbitration first. Nothing further. Well, if she could have initiated the arbitration, why couldn't American Express have initiated an arbitration on its claim for breach of contract? It could. It could have. But it's an independent claim, first of all. And second of all, I mean, this isn't in the record, but anecdotally the arbitration forms don't generally like collection actions. And that's why they filed them in court. And if someone shows up and says, I'm going to arbitrate this, then we head to arbitration. Thank you very much. Thank you. Thank you both for bringing your understandings of this case to us. That ends the oral arguments for this panel for this week. We are adjourned. Thank you.               Thank you.